**Hearing Date: July 31, 2025**
**Hearing Time: 10:30 a.m. (ET)**
**(Requested Pursuant to Motion to Shorten Notice)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| LINDA ENDRES GRECO, | Case No. 24-44301 |
| Debtor. | |

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF ASSETS OF THE ESTATE, (II) AUTHORIZING AUCTION SALE, (III) SCHEDULING A HEARING TO APPROVE THE SALE AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE,** that Debtor Linda Endres Greco (the "Debtor"), by and through undersigned counsel, will move this Court for the entry of an order, substantially in the form of the proposed order annexed hereto as **Exhibit 1**, (i) authorizing and approving sale and bid procedures in connection with the proposed sale of assets of the estate, (ii) authorizing the Auction, (iii) scheduling a hearing to approve the Sale and approving the form and manner of notice thereof; and (iv) granting related relief (the "Motion"), at the United States Bankruptcy Court for the Eastern District of New York, at the Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201, before Judge Elizabeth S. Stong, on July 31, 2025 at 10:30 a.m.

**PLEASE TAKE FURTHER NOTICE,** that those intending to appear at the hearing must register with eCourt Appearances no later than 2 days prior to the Hearing. The phone number of video link for the Hearing will be emailed only to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at

https://www.nyeb.uscourts.gov/registering-remote-hearing-apperance-using-ecourt-apperances. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two business days prior to the hearing date;

**PLEASE TAKE FURTHER NOTICE,** that objections to the Motion, if any (each, an "Objection"), shall be in writing, conform to the requirements set forth in E.D.N.Y. LBR 9013-1, and be filed and served so as to be actually received no later than July 24, 2025 at 4:00 p.m. by the following parties: (i) proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017, Attn: J. Ted Donovan (tdonovan@gwfglaw.com); (ii) Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510 New York, NY 10004-1408, Attn: Jeremy S. Sussman, Esq. (Jeremy.S.Sussman@usdoj.gov); and (iii) counsel to Wendover Funder LLC, Troutman Pepper Locke LLP, 875 Third Avenue, New York, NY 10022, Attn: Matthew R. Brooks (matthew.brooks@troutman.com).

**PLEASE TAKE FURTHER NOTICE,** that if no Objections are received, the Court may enter an order approving the Motion without a hearing.

Dated: July 18, 2025

By: */s/ J. Ted Donovan, Esq.*
J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
125 Park Avenue, 12th Floor
New York, New York 10017
Tel: (212) 221-5700
Email: tdonovan@gwfglaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LINDA ENDRES GRECO,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-44301 |

**DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF ASSETS OF THE ESTATE, (II) AUTHORIZING AUCTION SALE, (III) SCHEDULING A HEARING TO APPROVE THE SALE AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF**

The above captioned debtor and debtor-in-possession ("Debtor"), by and through its proposed attorneys, hereby seeks entry of an order (the "Sale Procedures Order"), a proposed form of which is annexed to this motion (the "Motion") as **Exhibit 1** (i) authorizing and approving sale and bid procedures in connection with the proposed sale of assets of the estate (the "Sale Procedures") attached to the Sale Procedures Order as Exhibit A, (ii) authorizing the Auction, (iii) scheduling a hearing to approve the Sale and approving the form and manner of notice thereof; and (iv) granting related relief. In support hereof, Debtor states:

## PRELIMINARY STATEMENT

1. The Sale Procedures (defined below) represent the culmination of months of discussions between the Debtor and its secured lender, Wendover Funder LLC (the "Secured Lender"). The Debtor and the Secured Lender have negotiated the terms of a consensual process for the sale of the Debtor's assets that is in the best interest of all stakeholders. The sale process will involve the retention of an agreed-upon broker to market the property for 60 days and obtain third-party offers, with the Secured Lender retaining the right to credit bid its secured claim and acquire the condominium units comprising its Collateral pursuant to section 363 of the Bankruptcy

Code if the sale process does not result in acceptable third party offers. The Debtor believes that the Sale Procedures and the related relief requested in this Motion will be an open and fair sale process to address the pending objections to the Settlement Motion (defined below) by conducting a public marketing and sale process of the properties and, consequently, is in the best interests of the Debtor's estates and all its stakeholders. Accordingly, the Debtor requests that this Court grant this Motion.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding arising under title 11 of the United States Code the ("Bankruptcy Code"). *See* 28 U.S.C. §157(b)(1). The statutory predicates for the relief sought are Sections 105(a), 363 and 365 of the Bankruptcy Code.

4. Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §1409.

## BACKGROUND

5. On October 17, 2024 (the "Petition Date"), Linda Endres Greco filed a voluntary petition under Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") commencing the Debtor's Chapter 11 case.

6. The Debtor directly and/or indirectly owns several units located at 132 Remsen Street, Brooklyn, New York ("132 Remsen") and two units located at 56 Court Street, Brooklyn, New York ("56 Court"). Specifically:

A. the Debtor directly owns Unit 4 at 132 Remsen.

B. As holder of 50% of the membership interests in Aherman LLC ("Aherman"), she indirectly owns Unit 3A and 4B at 56 Court and Units 1-3 and 6-9 at 132 Remsen.

C. As a holder of the membership interests in 259 Develop, she indirectly owns Unit 6 at 132 Remsen.

7. Among others, the Debtor is party to the following agreements with the Secured Lender:

A. The Fourth Amended and Restated Consolidated New York Balloon Note (the "Note"), dated as of June 16, 2020, by and among the Secured Lender, as the lender, and the Debtor, Louis, 295 Dev, BNDO, BNDO Mezz, SDS Leonard LLC, SDS, Aherman, and Aherman One, in each case as borrowers (collectively the "Term Borrowers"); and

B. The Amended and Restated Standby Letter Reimbursement Agreement, entered into on or about June 16, 2020 (the "Reimbursement Agreement"), by and among Wendover, as lender, and, including the Debtor, the Guarantors (as defined below).

8. The Note is secured by Units 1-4, and 6-12 at 132 Remsen and Units 3A and 4B at 56 Court (the "Note Collateral"). As of the Petition Date, $7,343,405.00 was outstanding under the Note (the "Outstanding Note Obligations"). The Outstanding Note Obligations are comprised of: (i) principal in the amount of $5,052,526; and (ii) interest in the amount of $2,290,879.00.

9. The Reimbursement Agreement is secured by Units 1-4, and 7-12 at 132 Remsen and Units 3A and 4B at 56 Court (the "Reimbursement Agreement Collateral", and together with the Note Collateral, the "Collateral"). The Reimbursement Agreement obligates the Debtor's husband, Louis Greco, to repay to the Secured Lender all amounts paid pursuant to the Standby Letter of Credit (the "LOC") for the account of Greco Family Trust No. 3. As of the Petition Date, the Debtor was obligated in the aggregated amount of $11,458,823.65 pursuant to the Reimbursement Agreement, which is comprised of (i) the outstanding amount due under the LOC totaling $10,718,911.00 and (ii) the fees and advances made totaling $739,912.65.

10. On January 17, 2025, in connection with the Loans, the Secured Lender filed a proof of claim (the "Proof of Claim") in the chapter 11 case in the amount of $19,915,907.00

comprised of (i) a principal balance of $14,515,526 and (ii) interest due in the amount of $5,400,381 (the "Indebtedness"). See Claim No. 20-1.

11. On May 1, 2025, the Debtor filed the *Motion to Approve Settlement with Secured Lender* [ECF No. 49] (the "Settlement Motion") pursuant to which the Debtor has agreed to lift the automatic stay to allow Secured Lender to immediately exercise any and all rights and remedies under the Loan Documents and applicable law against the Collateral, including, without limitation, initiating foreclosure proceedings against one or more properties constituting the Lender Collateral and taking any and all actions related thereto. Objections to the Settlement Motion were filed at ECF Nos. 52 and 53. The objections generally argue that the proposed settlement: (1) inappropriately contemplates the use of property held by Aherman (which the Debtor holds a 50% interest in, with Louis Greco holding the other 50%) to facilitate the settlement (*see* Dkt. No. 52), and (2) is a self-serving act by the Lender, for which the Debtor has failed to demonstrate why it is beneficial to the Debtor's creditors or her estate (*see* Dkt. No. 53). As a result of continued discussions among the Debtor and the Secured Lender, the parties have determined to pursue a consensual, orderly sale process of the Collateral pursuant to the Sale Procedures in order to resolve the Settlement Motion, including objections thereto, and effectuate one or more sales of the condominium units comprising the Collateral (each, a "Sale") to maximize value for all stakeholders. The process will involve the retention of a broker, mutually agreed upon by the Debtor and the Secured Lender, to market the property for 60 days and obtain third-party offers, with the Secured Lender retaining the right to credit bid the Indebtedness and acquire the Collateral under section 363 of the Bankruptcy Code if the Sale process does not result in acceptable third party offers on one or more condominium units comprising the Collateral. The Debtor believes that the Sale Procedures and the related relief requested in this Motion are necessary and in the

best interests of the Debtor's estates and all its stakeholders given the potentially contested issues regarding, among other things, the Secured Lender's pending Settlement Motion. Accordingly, the Debtor requests that this Court grant this Motion.

## RELIEF REQUESTED

12. By this Motion, the Debtor seeks entry of the Sale Procedures Order pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules"), (i) authorizing and approving sale and bid procedures in connection with the proposed sale of assets of the estate, (ii) authorizing the Auction, (iii) scheduling a hearing to approve the Sale and approving the form and manner of notice thereof; and (iv) granting related relief.

13. The Debtor will seek entry of a sale order (the "Sale Order") at the Sale Hearing (as defined below), which the Debtor will file in advance of the Sale Hearing. The Debtor will file declarations and other evidence in support of the Sale in advance of the sale hearing (the "Sale Hearing") to approve the Successful Bid and any Backup Bid (as defined below).

14. The Debtor is also seeking authority to commence the marketing process upon entry of the Sale Procedures Order with a broker mutually acceptable to the Debtor and Secured Lender (the "Broker"), which the Debtor will seek to retain by separate application filed no later than August 6, 2025 consistent with the Milestones, to be effective as of the date that the Broker commenced work.

## Marketing Process

15. Subject to an application to be filed in accordance with the Milestones, the Debtor has agreed that it will seek authority to retain the Broker. Notwithstanding any delay between the

entry of the Sale Procedures Order and the entry of an order approving the Broker's retention application, pursuant to this Motion, the Debtor is seeking the Court's approval for the Broker to provisionally commence the marketing and sale process for the Collateral, provided that the Debtor promptly files a retention application for the Broker in accordance with the Milestones. The Collateral shall be offered for sale "as is", "where is", and free and clear of all liens, claims and encumbrances (other than assumed contracts), with any such liens, claims, and encumbrances to attach to the proceeds in the order, priority and extent as they existed on the Petition Date.

## Proposed Sale Procedures

16. To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Sale Procedures to govern the marketing and sale of the Collateral. The Sale Procedures are designed to encourage all entities to put their best bids forward and enhance the value to Debtor's estate and represent compromise between Debtor and the Secured Lender.

17. In furtherance of the Sale Procedures Order, the Broker will prepare sales and marketing materials for circulation along with the Sale Procedures to potential buyers in order to maximize the value of the Collateral. Interested purchasers may be required to enter into confidentiality agreements with the Broker prior to their being provided with confidential information regarding the Collateral.

18. The Sale Procedures set forth the parameters for which Debtor and Broker will consider bids for the purchase of one or more condominium units comprising the Collateral, to be sold in one or more Sales in an order determined by the Secured Lender in its sole discretion. Additionally, the Sale Procedures: (a) set a bid deadline of **September 29, 2025 at 5:00 p.m. (ET)**, (b) define requirements for qualified bids; (c) set an auction date for **October 1, 2025 at 10:00 a.m. (ET)**, and (d) set the hearing to approve the sale on or before **October 10, 2025**. The Sale

Procedures also recognize the Secured Lender's right to submit a credit bid (up to the full amount of the Secured Lender Payoff Amount) for the Collateral consistent with section 363(k) of the Bankruptcy Code. The Debtors propose to give notice of the Auction, Sale Procedures and proposed Sale pursuant to the notice attached hereto as **Exhibit 2** (the Notice of Auction and Sale Hearing").

## BASIS FOR RELIEF

### I. The Relief Sought in the Sale Procedures Order is in the Best Interests of Debtor's Estate and Should be Approved

19. By this Motion, Debtor seeks this Court's approval of the Sale Procedures, authorize the Auction, schedule a hearing to approve the Sale, and approving the form and manner of notice thereof. The sale of the Collateral is appropriate and necessary, and approval of the Sale Procedures is warranted to ensure that the highest and best offer will be received for the Collateral. The Sale Procedures contemplate that the closing of the sale of the Collateral will occur only following a further hearing to consider approval of the Sale and upon the Court's entry of an appropriate form of order, as further set forth in the Sale Procedures.

20. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets by the estate. *See, e.g., In re Integrated Resources, Inc.,* 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard); *In re 995 Fifth Ave. Assocs.,* L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

21. The goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *In re Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at

hand"); *Integrated Resources,* 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

22. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., *Integrated Resources,* 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

23. The Debtor believes that the Sale Procedures will promote an engaged and robust marketing of the Collateral that will encourage active bidding and will elicit the best and highest offers available for the Collateral. The Sale Procedures will allow Debtor to conduct the sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best bids for the Collateral, and who can demonstrate the ability to close a transaction. Debtor believes that the Sale Procedures will encourage competitive bidding, that they are consistent with other procedures previously approved by this District and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources,* 147 B.R. at 659; *995 Fifth Avenue Assocs.,* 96 B.R. at 28; *see e.g., In re Linden Center LLC,* No. 23-41820 (ESS) (Bankr. E.D.N.Y. August 25, 2025) (approving similar bidding procedures); *In re BearingPoint, Inc.,* No. 0910691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving similar bidding procedures); *In re Silicon Graphics, Inc.,* No.

09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009); *In re Steve & Barry's Manhattan LLC,* No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008); *In re Fortunoff Fine Jewelry and Silverware, LLC,* No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008).

24. Based upon agreement reached between Debtor and the Secured Lender, the marketing and Auction process will continue from now until October 1, 2025, which the Debtor submits is a fair and reasonable period of time for the sale of the Collateral, including marketing, as described herein. The Debtor and the Secured Lender are in discussions regarding the identity of a mutually agreeable party to serve as Broker that will be able to quickly begin the marketing process following approval of the Sale Procedures. Any compensation sought by the Broker in connection with the proposed Sale will be subject to approval by the Court upon appropriate application made therefor.

25. Section 363(b) of the Bankruptcy Code governs the sale of assets outside the ordinary course of business. Section 363(b)(1) provides, in relevant part, that "[t]he [Debtor], after notice and hearing, my use, sell or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the sound discretion of the debtor. *See In re Iridium Operating, LLC,* 478 F.3d 452, 466 (2d Cir. 2007) ("In this Circuit, the sale of the asset of the estate under §363(b) is permissible if the 'judge determined [the] §363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing that [there is] a good business reason to grant such an application.' (citing *Comm Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F. 2d 1063, 1071 (2d Cir. 1983)); *see also Official Comm. Of Unsecured Creditors of LW Aerospace & Defense Co. v. LW Corp. (In re Chateaugay Corp.),* 973 F.2d 141, 145 (2nd Cir. 1993); *In re Dial-A-Mattress Operating Corp.,* 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test

is the standard for Section 363 sales in this Circuit." (citations omitted)); *In re Hirsch,* 360 B.R. 43, 45-46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application' (quoting *In re Lionel Corp.,* 722 F.2d at 1071)); *In re Thomson McKinnon Sec., Inc.,* 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

26. In addition, Section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case. 2 COLLIER ON BANKRUPTCY ¶105.01 (Alan N. Resnick and Henry J. Sommer Eds., 16th ed.).

27. In accordance with Bankruptcy Rule 6004(f)(1)(A), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale will most often result in a greater number of potential bidders in the shortest amount of time.

28. Here, sound business reasons exist to approve the proposed Sale Procedures, which will be a public marketing and sale process for the sale of substantially all of the Debtor's assets. *See In re Dial-A-Mattress Operating Corp.,* 2009 Bankr. LEXIS 1801 (a debtor's decision to sell substantially all of its assets to the highest bid at an auction was an appropriate business judgment decision because the highest bid presented the greatest benefits to the Chapter 11 estate). The Debtor believes that the proposed Sale Procedures will encourage prospective bidders to put forward their best bids quickly in order to generate the highest or best recoveries for the Debtor's stakeholders. The Sale Procedures provide for an orderly, uniform and appropriately competitive process through which interested parties may submit offers to purchase the Collateral. Taking into consideration the prepetition marketing process and the Debtor's limited postpetition liquidity, the

Debtor has structured the Sale Procedures to promote active bidding by interested parties and to confirm the highest or otherwise best offer reasonably available for the Assets. Additionally, the Sale Procedures will allow the Debtor to conduct the Auction in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale.

29. In addition, and as explained above, the Sale Procedures are the product of an agreement reached between Debtor and the Secured Lender to resolve the Settlement Motion and continued, consensual use of cash collateral through the Sale process. As such, the Sale Procedures requested herein, if approved, will avoid any further litigation by and between Debtor and the Secured Lender and ensure that the Collateral will be marketed and sold in an orderly and efficient manner for the benefit of the estate.

## II. The Time, Place, and Notice Proposed for the Auction are Reasonable and Should be Approved

30. Bankruptcy Rule 6004 prescribes the notice that must be given of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code. Pursuant to Bankruptcy Rule 6004(a), notice must be given of a proposed use, sale, or lease of property, not in the ordinary course of business, which satisfies the requirements of Bankruptcy Rule 2002(a)(2) and (c)(1), among others.

31. Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: … (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business…." Fed. R. Bankr. P. 2002(a). Bankruptcy Rule 2002(c) requires that this notice include "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002(c).

32. Bankruptcy Rule 6004(c) requires that a motion pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interests in the property to be sold." Fed. R. Bankr. P. 6004(c).

33. This Motion does not seek the approval of the Sale or any substantive relief with respect to the Sale at this time; rather, this Motion seeks only the Court's approval of the procedures, dates, deadlines, and other procedural relief to set up the framework of the sale process. Parties in interest will have more than 21 days in which to object to the proposed sale following service of the Sale Notice, which the Sale Procedures require to be served within five (5) business days after the entry of the Sale Procedures Order. As also stated above, the Debtor proposes that the Auction be held approximately 60 days following the date of the entry of the Sale Procedures Order. The Notice of Auction and Sale Hearing sets forth all the information a potential bidder and any other party in interest should require about the bidding process for the Collateral, including: notice of the Sale Procedures and information on how to obtain a copy of the Sale Procedures; the Bid Deadline; the time, date, and location of the Auction; and the time, date, and location of the Sale Hearing. The Debtor submits that these notice procedures satisfy the requirements of Bankruptcy Rule 6004 and request that the Court approve the same.

## III. In the Event of a Sale, the Collateral Will Be Sold Free and Clear of All Liens

34. Bankruptcy Code Section 363 permits the sale of assets to be free and clear of liens, claims, and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the property is disputed; or (e) the entity with an interest in the last asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. *See* 11 U.S.C. §363(f).

35. Since Bankruptcy Code Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to approve the sale of the Collateral "free and clear" of liens, claims, encumbrances and interests (other than the Assumed Contracts). *See* 11 U.S.C. §363(f); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (recognizing that Section 363(f) of the Bankruptcy Code is written in disjunctive, and holding that Court may approve sale "free and clear" provided that at least one subsection of Section 363(f) is met), *cert dismissed,*. 503 U.S. 978 (1992); *Citicorp Homeowners Servs., Inc. v. Elliot (in re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (same). Prior to the Sale Hearing, the Debtor will file appropriate declarations and other evidence to show that the Sale satisfies at least on condition of Section 363(f), and thus the Collateral may be sold free of liens and encumbrances.

## IV. <u>The Secured Lender is Permitted to Credit Bid the Indebtedness Pursuant to Section 363(k) of the Bankruptcy Code</u>

36. Section 363(k) of the Bankruptcy Code provides that at a sale under section 363(b) of the Bankruptcy Code of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property. The Debtor has agreed that it shall (a) stipulate that the Secured Lender shall have an allowed secured claim in the amount of no less than $19,915,907.00, as calculated in the Proof of Claim (such amount, together with any additional fees, expenses and obligations owed to the Secured Lender, collectively, the "<u>Secured Lender Allowed Claim</u>"), and (b) waive any and all objections to the amount and validity of the Secured Lender's secured claim and its security interests in the Collateral. Accordingly, at the time of the Bid Deadline, the Debtor submits that the Collateral shall be subject to a lien that secures the Secured Lender Allowed Claim

within the meaning of Section 363(k) of the Bankruptcy Code, and the Secured Lender is thus entitled to credit bid the Secured Lender Payoff Amount.

## CONCLUSION

37. Thus, the Sale Procedures are reasonable, appropriate, and within Debtor's sound business judgment under the circumstances because the Sale Procedures are designed to maximize the value to be received by Debtor's estate.

38. Notice of this Motion will be given to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) counsel to the Secured Lender; (iii) all creditors in this case; (iv) any parties known or reasonably believed to have expressed interest in the Collateral within the last six months; (v) all other parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002; and (vi) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(d). The Debtor submits that no other or further notice is required.

39. No prior application for the relief sought has been made by Debtor to this or any other court.

WHEREFORE, Debtor respectfully requests that this Court enter the Order granting the relief requested herein and such other and further relief as may be just and appropriate.

Dated: July 18, 2025

By: */s/ J. Ted Donovan, Esq.*
J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
125 Park Avenue, 12th Floor
New York, New York 10017
Tel: (212) 221-5700
Email: tdonovan@gwfglaw.com

**<u>EXHIBIT 1</u>**

**Proposed Sale Procedures Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| LINDA ENDRES GRECO, Debtor. | Case No. 24-44301 |

**ORDER (I) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF ASSETS OF THE ESTATE, (II) AUTHORIZING AUCTION SALE, (III) SCHEDULING A HEARING TO APPROVE THE SALE AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above captioned debtor and debtor in possession (the "Debtor") for the entry of an order (this "Sale Procedures Order") (i) authorizing and approving sale and bid procedures in connection with the proposed sale of assets of the estate (the "Sale Procedures"), (ii) authorizing the Auction, (iii) scheduling a hearing to approve the Sale and approving the form and manner of notice thereof; and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue being proper pursuant to 28 U.S.C. §§1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Debtor having provided adequate and appropriate notice of the Motion; and a hearing on the Motion having been held on July 31, 2025; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

[1] Capitalized terms used but not defined herein shall have the meanings as set forth in the Motion.

1. The Motion is granted to the extent provided herein.

2. All objections to entry of this Sale Procedures Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

3. The Sale Procedures attached to this Order as Exhibit A are hereby approved in their entirety, incorporated by reference as if fully set forth herein and shall govern all proceedings relating to the Sale of the Collateral.[2] The Debtor is authorized to conduct the auction of the Collateral, and otherwise act, in accordance with the Sale Procedures.

4. The Bid Deadline shall be **September 29, 2025 at 5:00 p.m. (ET).**

5. The Auction shall be conducted on **October 1, 2025 at 10:00 a.m. (ET)** consistent with the Sale Procedures at the offices of proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017.

6. The Court shall convene the Sale Hearing on **October 10, 2025 at [•] a.m.** (as may be adjourned consistent with the Sale Procedures), before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge of the Bankruptcy Court, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, at which time this Court shall (i) consider approval of the Sale to the Successful Bidder; (ii) consider the entry of the proposed sale order to be filed prior to the Sale Hearing along with such supporting declarations and other materials as may be required in order to support the approval of the Sale (iii) consider any issues or objections that are timely interposed by any parties; and (iv) grant such other or further relief as this Court may deem just or proper.

7. Objections, if any, to the Sale, other than with respect to the relief granted herein, shall: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with this Court and

[2] Capitalized terms used but not defined herein shall have the meanings given such terms in the Sale Procedures.

served so as to be received seven days prior to the hearing on the sale (the "Objection Deadline"), by (i) proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017, Attn: J. Ted Donovan (tdonovan@gwfglaw.com); (ii) Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510 New York, NY 10004-1408, Attn: Jeremy S. Sussman, Esq. (Jeremy.S.Sussman@usdoj.gov); and (iii) counsel to Wendover Funder LLC, Troutman Pepper Locke LLP, 875 Third Avenue, New York, NY 10022, Attn: Matthew R. Brooks (matthew.brooks@troutman.com). Only timely filed and served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

8. The failure of any person or entity to timely file their objection to the Motion shall forever bar any objection to the Motion or the relief requested therein, or to the consummation of the Sale.

9. Upon entry of this Order, the Broker shall be authorized to provisionally commence the marketing process for the Collateral, provided that the Debtor promptly files a retention application for the Broker by **August 6, 2025**.

10. Pursuant to section 363(k) of the Bankruptcy Code, the Secured Lender is entitled, in its sole discretion, to credit bid the Secured Lender Payoff Amount consistent with the Sale Procedures, including at the Auction. Upon entry of this Order, the Debtor shall be deemed to have stipulated that (a) the Secured Lender shall have an allowed secured claim in the amount of no less than $19,915,907.00, as calculated in the Proof of Claim (such amount, together with any additional fees, expenses and obligations owed to the Secured Lender, collectively, the "Secured Lender Allowed Claim"), and (b) waive any and all objections to the amount and validity of the Secured Lender's secured claim and its security interests in the Collateral.

11. All parties that participate, in any respect, in the process set forth in the Sale Procedures shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Sale Procedures Order (including any disputes relating to the Sale Procedures, the Auction and/or the Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to any of the foregoing matters.

12. Within five (5) business days after the entry of this Order, the Debtor shall cause a copy of the Sale Procedures, the Notice of Auction and Sale Hearing, and this Order to be served by first- class mail upon: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) all secured creditors or counsel if known; (iii) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Collateral ; (iv) all equity holders; (v) all federal, state and local regulatory or taxing authorities or recording offices that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vi) all parties known by the Debtor to have expressed a bona fide interest in acquiring the Collateral ; (vii)the Internal Revenue Service; (viii) the United States Attorney's office; and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case and all creditors in the case.

13. The notice set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion, the Auction, and the Sale Hearing, and no other or further notice of the Motion, the Auction, or the Sale Hearing shall be necessary or required.

14. In the event there is any conflict between this Order and the Sale Procedures, the terms and conditions of the Sale Procedures shall control and govern in all respects.

15. The Debtor is authorized to take all actions necessary or appropriate to effectuate or otherwise implement the Sale Procedures and the relief granted pursuant to this Sale Procedures Order in accordance with the Motion and the Sale Procedures.

16. The Debtor may not amend, or otherwise modify, the Sale Procedures without the written consent of the Secured Lender.

17. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Sale Procedures Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

18. The Court may retain jurisdiction with respect to all matters arising from or related to the implementation of this Sale Procedures Order.

## EXHIBIT A

## BID PROCEDURES[1]

The following bid procedures (the "Sale Procedures"), which were approved by an order for the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") dated [•], 2025 (the "Sale Procedures Order") in the chapter 11 bankruptcy case of Linda Endres Greco, debtor and debtor-in-possession (the "Debtor"), Case No. 25-44301-ess (the "Chapter 11 Case"), shall govern the auction and sale of Units 1-4, and 6-12 at 132 Remsen and Units 3A and 4B at 56 Court (collectively, the "Collateral"). Each of the units comprising the Collateral may be sold individually to one or more Successful Bidders in separate Sales, in an order determined by the Secured Lender in its sole discretion. Following the Auction (as defined below), the Debtor will seek entry of one or more Orders from the Bankruptcy Court authorizing and approving the Sale(s) (as defined below) of the Collateral free and clear of liens, claims, encumbrances, and interests (subject to certain exceptions listed in paragraph B(ii) below), to the Successful Bidder (as defined below).

A. Approvals. Each Sale (as defined below) shall in all respects be subject to approval by the Bankruptcy Court and the Secured Lender, and shall comply with (i) the applicable provisions of the Bankruptcy Code, (ii) the Bankruptcy Rules, and (iii) other applicable rules and law.

B. Assets to be Sold. The assets to be sold shall consist of the Collateral, which will be sold as follows:

(i) The sale of one or more units comprising the Collateral (each, a "Sale") will be auctioned by a broker acceptable to Secured Lender (the "Broker") who has been retained by the Debtor as its exclusive broker, and such sale, if it is an "Acceptable Sale", shall be free and clear of liens, claims, encumbrances and interests, except as provided in B(ii) below. As used herein, "Acceptable Sale" is one in which (i) the Secured Lender Allowed Claim (as defined below) is indefeasibly satisfied in full to the satisfaction of the Secured Lender or (ii) the Secured Lender otherwise consents in writing.

(ii) All executory contracts and unexpired leases related to the Collateral shall be rejected by the Debtor unless the Successful Bidder elects to assume a particular executory contract or unexpired lease by making election of its intention to be assigned such contract as part of its Bid and/or PSA (as defined below).

[1] Capitalized terms used but not defined herein shall have the meanings given such terms in the *Debtor's Motion for Entry of Order (I) Approving Sale and Bid Procedures in Connection with the Proposed Sale of Assets of the Estate, (II) Authorizing Auction Sale, (III) Scheduling a Hearing to Approve the Sale and Approving Form and Manner of Notice Thereof, and (IV) Granting Related Relief* (the "Motion").

C. Sale As Is, Where Is. The Collateral shall be sold as is, where is, with all faults, and without any representation or warranty of any type whatsoever.

D. Qualification of Bidders. Any potential bidder, other than Secured Lender or its nominee, designee or assignee, who wishes to submit a bid with respect to one or more units comprising the Collateral must demonstrate to the satisfaction of the Broker that such potential bidder is a "Qualified Bidder." To the extent the Secured Lender decides, in its sole discretion, to submit, at any time, a credit bid, of any quantum, Secured Lender shall be deemed a Qualified Bidder for purposes of these Sale Procedures. A Qualified Bidder is a potential bidder who delivers to the Broker a written and signed, binding offer **on or before the Bid Deadline** (as defined below) that:

(i) specifies which units comprising the Collateral it seeks to purchase;

(ii) includes a proposed purchase price denominated in United States Dollars;

(iii) states that the bidder is prepared to enter into a legally binding bid offer in the form as proscribed by the Broker or, at the election of the bidder, a purchase and sale agreement ("PSA") for the acquisition of the Collateral on terms and conditions reasonably acceptable to the Debtor and Secured Lender, including by marking up the PSA, which will be provided to the Bidder at least fourteen (14) days prior to the Bid Deadline, to indicate what the Bidder would be willing to execute;

(iv) states the bidder's offer is irrevocable, and not contingent;

(v) does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(vi) fully discloses the identity of each entity that will be bidding for the Collateral (the "Potential Bidder") or otherwise participating in connection with such bid on behalf of the Potential Bidder, the terms of any such participation (including if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the bid, the equity holder or other financial backer), the Potential Bidder's address, telephone number and email address where the bidder may be contacted;

(vii) is accompanied by evidence that a good faith deposit in the amount of 10% of the total proposed purchase price (the "Good Faith Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to Goldberg Weprin Finkel Goldstein LLP (in such capacity, the "Escrow Agent"), pursuant to wire instructions to be provided by the Broker and/or the Escrow Agent, and acknowledges that the Good Faith Deposit shall be held by the Escrow Agent in a non-interest bearing, segregated, account of the Escrow Agent for the Debtor's estate in accordance with the terms hereof; provided that, in no event, shall the

Secured Lender be required to make any Good Faith Deposit if it makes a credit bid;

(viii) states that the bidder is financially capable of consummating the transaction contemplated by the bidder's bid and any increased or modified bid that may be made at the Auction;

(ix) is accompanied by financial information satisfactory to the Broker and the Secured Lender that fairly and reasonably demonstrates the Potential Bidder's ability (and the sources of the Potential Bidder's ability) to close on its purchase of the Collateral if the Potential Bidder should be the Successful Bidder (as defined below) and any increased or modified bid that may be made at the Auction;

(x) includes an executed original of these Sale Procedures acknowledging and agreeing to these Sale Procedures and all the terms thereof, including the following:

1. The Potential Bidder is not a partner, officer, director, stockholder, agent, employee, insider or affiliate of the Debtor, the Debtor's principals, the Broker or any relative of any of the foregoing;

2. the Potential Bidder relied solely on its own independent investigation, analysis, appraisal, and evaluation of the Collateral and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Collateral; and

3. the Potential Bidder's bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its bid is affirmatively rejected;

(xi) includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of a PSA, if applicable; and

(xii) contains other information reasonably requested by the Debtor, the Secured Lender and/or Broker.

A bid meeting the above requirements shall constitute a "Qualified Bid". The Broker, in consultation with the Secured Lender, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 4:00 p.m. two (2) business days prior to the date of the Auction.

E. Buyer's Premium. The "Buyer's Premium" shall be as set forth in any order approving the Broker's retention, or as otherwise agreed to with the Secured Lender; provided that the Buyer's Premium with respect to Secured Lender

acquiring the Collateral via a credit bid may be a smaller amount (as reflected in any order approving the Broker's retention).

F. Deposits Following Auction. Subject only to Section (E) hereinabove, if the Potential Bidder becomes a Successful Bidder as to the Collateral, it shall, within two (2) business days after the Auction, increase the Good Faith Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii) the Buyer's Premium (not counting to be approved expenses), TIME BEING OF THE ESSENCE. Failure to comply with this requirement shall result in an immediate (i) default under the terms of these Sale Procedures; and (ii) forfeiture of the Successful Bidder's Good Faith Deposit. If a Potential Bidder is not the Successful Bidder or the Backup Bidder (as defined below) as to the Collateral, such Potential Bidder's Good Faith Deposit shall be returned to such Potential Bidder as soon as reasonably practicable after the conclusion of the Auction. The Successful Bidder and Backup Bidder's Good Faith Deposits shall be held pending the closing. If the Sale to the Successful Bidder closes as to the Collateral, the Backup Bidder's Good Faith Deposit for the Collateral shall be returned as soon as reasonably practicable after such closing. This provision shall not apply to the Secured Lender if Secured Lender is the Successful Bidder.

G. Closing Deadline. Each Successful Bidder shall close on its purchase of Collateral no later than 60 days after the completion of the Auction and entry of an order by the Bankruptcy Court approving the Sale to the Successful Bidder as to the Collateral; *provided* that each closing may take place on such other date as the Secured Lender and the Successful Bidder may mutually agree to in writing, or on such other date as may otherwise be directed by Order of the Bankruptcy Court (such date, the "Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING; *provided further* that each Sale shall close in an order determined by the Secured Lender in its sole discretion . The Debtor will use its reasonable best efforts to obtain an order of the Bankruptcy Court (i) approving each sale and a finding of good faith and non-collusive behavior of such sale pursuant to Section 363(m) and (n) of the Bankruptcy Code, and (ii) containing a finding that the Debtor was authorized to commence the Chapter 11 Case and sell the Collateral, in each case of the foregoing (i) and (ii) within nine days of the completion of the Auction. The Successful Bidder and the Backup Bidder will file any affirmation or similar document (with exhibits if necessary) the Bankruptcy Court or the Debtor requires to enable the Debtor to obtain such an order from the Bankruptcy Court.

H. The Secured Lender as a Qualified Bidder. Notwithstanding anything herein to the contrary, the Secured Lender or its nominee, designee or assignee is a Qualified Bidder and, although under no obligation to do so, is entitled to credit bid up to its entire secured claim, which claim in no event shall be less than $19,915,907.00, as calculated in the Proof of Claim (such amount, together with any additional fees, expenses and obligations owed to the Secured Lender, collectively, the "Secured Lender Allowed Claim"), for the Collateral pursuant to 11 U.S.C. § 363(k), without

the need for any deposit or fulfilling any of the other requirements for a Potential Bidder to be a Qualified Bidder. The Secured Lender shall provide the Debtor with a final payoff amount consistent with the Secured Lender Allowed Claim within twenty-four (24) hours of the Auction Date and Time (the "Secured Lender Payoff Amount").

I. Remedy Upon Breach. Upon any breach by Debtor of any of its obligations, covenants or representations in the Sale Procedures Order or Sale Procedures (including a breach of any Milestone by Debtor or Debtor's refusal to consummate or hold an Auction) (i) the Auction shall continue in accordance with the Sale Procedures, (ii) the Secured Lender may credit bid up to the full amount of the Secured Lender Allowed Claim at any Auction for the Collateral or at a hearing before this Court consistent with the Sale Procedures (including at the Sale Hearing); and (iii) the Secured Lender credit bid, if the highest and best bid for the Collateral in accordance with the Sale Procedures, shall be approved by the Court at either the Sale Hearing or another hearing held before the Court consistent with the Sale Procedures.

J. Milestones: The Debtor shall conduct the Sale, and the Chapter 11 Case generally, consistent with, and pursuant to, the following deadlines (each a "Milestone"). The Milestones may not be amended, modified or otherwise revised absent prior written consent of the Secured Lender.

(i) **August 4, 2025**: Outside date for entry of the Sale Procedures Order by the Court.

(ii) **August 5, 2025**: The Debtor shall deliver to the Secured Lender such documentation and information as the Secured Lender may request, which shall be acceptable to the Secured Lender in all respects.

(iii) **August 6, 2025**: The Debtor shall have filed (a) an application to retain a broker acceptable to Secured Lender (the "Broker") on terms and conditions (including with respect to fees and costs) acceptable to Secured Lender, in each case, in Secured Lender's sole and absolute discretion (the "Broker Retention Motion"), and (b) a motion to shorten notice with respect to the Broker Retention Motion so that the Broker Retention Motion may be heard on no more than fourteen (14) days' notice (subject to availability of the Court), and in any event no later than August 20, 2025.

(iv) **August 8, 2025**: The Debtor shall have provided, allowed and facilitated, an inspection of the Collateral by the Secured Lender (or its designee) and the Broker (such inspection, the "Inspection Visit"). The Secured Lender and the Broker shall have the right to visit and inspect the Collateral at Secured Lender's preferred time and date (so long as the Secured Lender provides the Debtor two (2) business days' advance notice of the time and date of the Inspection Visit), and the Secured Lender shall have the ability

to request additional follow-up visits and inspections at the Collateral as the Secured Lender determines in its sole discretion.

(v) **September 29, 2025 at 5:00 p.m. (ET):** The deadline for submission of bids (the "Bid Deadline").

(vi) **October 1, 2025 at 10:00 a.m. (ET):** The date of the auction (the "Auction").

(vii) **October 10, 2025:** The date of the hearing to approve each Sale (the "Sale Hearing").

(viii) **October 20, 2025:** The outside date by which Orders approving each Sale must be entered by the Bankruptcy Court.

(ix) **November 30, 2025:** The outside date by which the closing of each Sale must occur (the "Outside Closing Date").

K. Bid Deadline. **All Qualified Bids, other than from the Secured Lender, must be submitted on or before the Bid Deadline** unless extended by the Debtor and the Secured Lender in its discretion with notice to be provided to all parties that have expressed serious interest (as determined by the Broker) in potentially bidding on the Collateral. On or prior to the Bid Deadline, Qualified Bidders shall deliver written copies of their bids to: (1) the Broker; (2) proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017, Attn: J. Ted Donovan (tdonovan@gwfglaw.com), and (3) counsel to Wendover Funder LLC, Troutman Pepper Locke LLP, 875 Third Avenue, New York, NY 10022, Attn: Matthew R. Brooks (matthew.brooks@troutman.com). The Secured Lender shall be permitted to provide its credit bid, if any, at the Auction or any time before in Secured Lender's sole discretion.

L. Auction. The Broker shall conduct the Auction at which the Secured Lender may credit bid, and any other Qualified Bidders may bid, for the Collateral. The Auction shall take place on **October 1, 2025, at 10:00 a.m.** (ET) (the "Auction Date and Time"). The Auction and Auction Date and Time shall not be moved absent consent of the Secured Lender. With the consent of the Secured Lender, the Broker may move the Auction Date and Time to such other place and time as the Broker shall notify all Qualified Bidders, the Debtor, the Secured Lender, and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Date and Time (or re-scheduled Auction Date and Time, as applicable). The Broker must notify the Secured Lender within 24 hours of the Bid Deadline as to whether any Qualified Bid was received. If no Qualified Bid is received prior to the Bid Deadline, then the Debtor, without holding the Auction, shall accept any credit bid put forth by the Secured Lender, which credit bid by the Secured Lender shall be deemed the Successful Bid (as defined below), and the Debtor and Secured Lender shall coordinate, and file, a notice declaring the Secured Lender as the Successful Bidder. The Auction shall be governed by the following procedures:

(i) Only authorized representatives and respective counsel of each of the Qualified Bidders, the Secured Lender, the Debtor, and the Broker shall be permitted to attend and participate at the Auction, unless otherwise agreed to by the Broker in its sole discretion;

(ii) Only the Secured Lender (or its nominee, designee or assignee) and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(iii) The Secured Lender (or its nominee, designee or assignee) and each other Qualified Bidder shall be required to confirm at the beginning of the Auction that it has not engaged in and will not engage in any collusion with respect to the bidding or the sale;

(iv) Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline or at a credit bid set forth by the Secured Lender;

(v) The Broker and the Debtor shall have the exclusive rights to set the bidding increments;

(vi) The Secured Lender (or its nominee, designee or assignee) and other Qualified Bidders shall participate in person at the Auction (or through a method designated by Broker, including being physically present or present through electronic means, such as Zoom), through a duly authorized representative with authority to bind the entity, at the offices of proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017.

(vii) The Auction will be conducted so that the Secured Lender (or its nominee, designee or assignee), and each other Qualified Bidder will be informed of the previous bid;

(viii) The Auction shall continue until there is only one final offer for the Collateral that indefeasibly satisfies in full the Secured Lender Payoff Amount (or the Secured Lender otherwise consents) and the Broker determines, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Secured Lender (or its nominee, designee or assignee), if applicable, and the other Qualified Bidders (the "Successful Bid"). An offer cannot be a Successful Bid unless the Secured Lender agrees that such bid would indefeasibly pay in full the Secured Lender Payoff Amount (or the Secured Lender otherwise agrees in writing that an offer may be a Successful Bid). The bidder submitting such Successful Bid shall become a "Successful Bidder" as to the Collateral and shall have such rights and responsibilities set forth herein, contained in any documents contemplated hereby and, as and if applicable, a PSA. To the extent the Secured Lender becomes the Successful Bidder, it shall, unless it

elects otherwise in its sole discretion, acquire the Collateral free and clear of all liens, claims, and interests consistent with Section 363 of the Bankruptcy Code;

(ix) If the Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid (the "Backup Bid") at the conclusion of the Auction for the Collateral, as determined by the Debtor in the exercise of its business judgment, shall be required to serve as a backup bidder (the "Backup Bidder") in accordance with the terms and conditions set forth herein. Each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtor, subject to the terms of such Backup Bidder's PSA; provided that a bid cannot be the Backup Bid unless the Secured Lender agrees that such bid would indefeasibly pay in full the Secured Lender Payoff Amount or the Secured Lender otherwise agrees;

(x) The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtor, at the conclusion of the Auction at the same time the Debtor announces the identity of the Successful Bidder related thereto;

(xi) The Debtor reserves the right to seek approval of the Backup Bid as a back-up bid and may seek approval at the Sale Hearing to close the Sale to the Backup Bidder if the Successful Bidder fails to close for any reason or if it otherwise fails to satisfy any requirements hereof or, as applicable, in the PSA;

(xii) if (a) a Qualified Bidder is a Successful Bidder as to the Collateral, the Deposit shall become non-refundable and shall be forfeited by the Successful Bidder as liquidated damages in the event the Successful Bidder shall fail to close the purchase of the Collateral on the Closing Date, except as otherwise expressly permitted under the applicable PSA entered into between the Debtor and the Successful Bidder; and (b) if the Debtor and the Broker determine to proceed with the Backup Bid after default by the Successful Bidder, the applicable Good Faith Deposit shall become non-refundable and shall be forfeited by such Backup Bidder as liquidated damages if the Backup Bidder shall fail to close the purchase of the Collateral on the Backup Closing Date (as defined below), except as otherwise expressly permitted under the applicable PSA entered into between the Debtor and such Backup Bidder; and

(xiii) As set forth in the Motion, if no other Qualified Bids are received by the Bid Deadline, the Debtor and Secured Lender are authorized to file any requisite notice informing the Court as to the designation of the Secured Lender as the Successful Bidder and to take any other actions to facilitate the sale of the Collateral to the Secured Lender, including with respect to the Sale Hearing and Auction.

M. Sale Hearing. The hearing to approve the Sale of the Collateral to the Successful Bidder shall be within nine (9) days of the Auction (or otherwise subject to the availability of the Bankruptcy Court) (the "Sale Hearing"). The Debtor may not move or adjourn the Sale Hearing absent the Secured Lender's consent.

N. Within five (5) business days after entry of the Sale Procedures Order, the Debtor shall service notice of the Sale Hearing, including the identity of the Successful Bidder and the deadline to object to the Sale, on the following parties or their respective counsel, if known: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) all secured creditors or counsel if known; (iii) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Collateral; (iv) all equity holders; (v) all federal, state and local regulatory or taxing authorities or recording offices that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vi) all parties known by the Debtor to have expressed a bona fide interest in acquiring the Collateral; (vii) the Internal Revenue Service; (viii) the United States Attorney's office; and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case and all creditors in the case.

O. Closing on Backup Bid. If for any reason the Successful Bidder shall fail to timely close the sale of the Collateral, and the Debtor, with the consent of the Secured Lender, determines to proceed with the Backup Bid, the Backup Bidder shall close on the purchase of the Collateral and pay the amount of the Backup Bid, less its Good Faith Deposit previously posted, on the later of the Closing Date and twenty one (21) days after written notice of the Successful Bidder's default in closing (the "Backup Closing Date"), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER' S OBLIGATION TO CLOSE ON THE BACKUP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. In any case, the Debtor has until thirty (30) days after the Auction to determine to proceed with the Backup Bid. If the Debtor proceeds with such Backup Bid, then the Backup Bidder shall be obligated to close title to the Collateral and there shall be no contingency of any kind or nature that will permit the Backup Bidder not to proceed on the Backup Closing Date other than the inability of the Debtor to deliver title to the Collateral. In the event the Backup Bidder shall be obliged, but shall fail, to close purchase of the Collateral timely in accordance with the provisions of these Sale Procedures or the applicable PSA entered into between the Debtor and the Backup Bidder, the Backup Bidder shall be in default, and the Backup Bidder shall forfeit its Good Faith Deposit. Notwithstanding the foregoing, the Debtor shall have the right, but not the obligation, to extend the Backup Closing Date up to an additional ten (10) business days (the "Adjourned Backup Closing Period"), with TIME BEING OF THE ESSENCE as to such Backup Bidder's obligation to close prior to the expiration of the Adjourned Backup Closing Period; and in such event, if the Backup Bidder shall fail to close the purchase of the Collateral prior to expiration of the Adjourned Backup Closing Period in accordance with the provisions of these Sale Procedures or the applicable PSA, the Backup Bidder shall be in default and the Backup Bidder shall forfeit its Good Faith Deposit. If the Backup Bidder fails to close on the

purchase of the Collateral in accordance with this paragraph (O), then the Debtor shall sell the property to the Secured Lender via any credit bid (in any amount) set forth in any approval materials and/or motion acceptable to the Secured Lender, and the Debtor shall seek Bankruptcy Court approval of such sale to the Secured Lender on an expedited basis as acceptable to the Secured Lender.

# EXHIBIT 2

**Notice of Auction and Sale Hearing**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LINDA ENDRES GRECO,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-44301 |

**NOTICE OF PROPOSED SALE OF ASSETS, BID PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that on October 17, 2024, the above-captioned debtor and debtor in possession each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Court"). The Debtor is seeking to sell (the "Sale") Units 1-4 and 7-12 at 132 Remsen Street, Brooklyn, New York ("132 Remsen") and Units 3A and 4B at 56 Court Street, Brooklyn, New York ("56 Court") (collectively, the "Collateral") free and clear of all liens and encumbrances.

**PLEASE TAKE FURTHER NOTICE** that by order dated [•] 2025 [Docket No. [•] (the "Sale Procedures Order"), the Court approved certain relief requested in the related motion [Docket No. [•]] (the "Sale Procedures Motion"), and certain "Sale Procedures" that govern the sale of the Assets to the highest or otherwise best bidders. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtor that may be assumed and assigned in connection with the Sale. Copies of the Sale Procedures may be obtained by contacting proposed counsel to the Debtor, J. Ted Donovan, at Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor New York, New York 10017 (tdonovan@gwfglaw.com).

**PLEASE TAKE FURTHER NOTICE** that the deadline to submit a bid for any Assets is **September 29, 2025 at 4:00 p.m. (E.T.)**.

**PLEASE TAKE FURTHER NOTICE** that an auction for the Collateral, unless cancelled or adjourned in accordance with the Sale Procedures Order, will be held on **October 1, 2025 at 10:00 a.m. (ET)**, at the offices of Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor New York, New York 10017, or such later date and time as selected by the Debtor (with the approval of the Secured Lender).

**PLEASE TAKE FURTHER NOTICE** that unless adjourned in accordance with the Sale Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on **October 10, 2025** before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge of the Bankruptcy Court, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Sale, other than with respect to the relief granted in the Sale Procedures Motion, shall: (a) be in writing; (b) comply with the Bankruptcy Rules; (c) be filed with this Court and served so as to be received seven days prior to the Sale Hearing (the "Objection Deadline"), by (i) proposed counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 125 Park Avenue, 12th Floor, New York, NY 10017, Attn: J. Ted Donovan (tdonovan@gwfglaw.com); (ii) Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510 New York, NY 10004-1408, Attn: Jeremy S. Sussman, Esq. (Jeremy.S.Sussman@usdoj.gov); and (iii) counsel to Wendover Funder LLC, Troutman Pepper Locke LLP, 875 Third Avenue, New York, NY 10022, Attn: Matthew R. Brooks (matthew.brooks@troutman.com). Only timely filed and served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BID PROCEDURES, THE BID PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BID FOR AND AUCTION OF ANY OF THE DEBTOR' ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated: [•]

By: */s/ Draft*

J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
125 Park Avenue, 12th Floor
New York, New York 10017
Tel: (212) 221-5700
Email: tdonovan@gwfglaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LINDA ENDRES GRECO,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-44301 |

**CERTIFICATE OF SERVICE**

I, J. Ted Donovan, hereby declare, under penalty of perjury under the laws of the United States of America, and pursuant to 28 U.S.C. § 1746, that on Thursday, July 18, 2025, I caused to be served a copy of the NOTICE OF DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF ASSETS OF THE ESTATE, (II) AUTHORIZING AUCTION SALE, (III) SCHEDULING A HEARING TO APPROVE THE SALE AND APPROVING FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF, by overnight mail upon each of the parties listed on the "service-list" below by depositing true copies of same in sealed envelopes, with postage prepaid thereon, in an official depository of the United States Postal Service within the borough of Brooklyn, in the City and State of New York.

Dated: July 18, 2025

By: /s/ *J. Ted Donovan*
J. Ted Donovan

**Service List**